

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

*Hardin DeWayne Hale*

**Signed May 19, 2005**                                            **United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| STATEPARK BUILDING GROUP, LTD. | § | Case No. 04-33916-HDH-11 |
| COLONNADE ON TURTLE CREEK, L.P. | § | Case No. 04-33922-HDH-11 |
| STATEPARK COLLEYVILLE, LTD. | § | Case No. 04-33928-HDH-11 |
| BLACKBURN/TRAVIS/COLE, LTD. | § | Case No. 04-33932-HDH-11 |
| PORTOBELLO, LTD. | § | Case No. 04-33934-HDH-11 |
| | § | (Jointly Administered Under |
| Debtors. | § | Case No. 04-33916-HDH-11) |
| | § | |
| | § | Hearing:   May 10, 2005 |
| | § |                at 1:30 p.m. |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF CONFIRMATION OF ROBERT MILBANK, JR., CHAPTER 11 TRUSTEE, AND CERTAIN CREDITORS SECOND AMENDED JOINT PLAN OF REORGANIZATION

On May 10, 2005, this Court held a hearing to consider confirmation of the Second Amended Joint Plan of Reorganization Under Chapter 11 proposed by Robert Milbank, Jr. Chapter 11 Trustee and Certain Creditors, filed April 7, 2005, as modified by the First Modification filed on May 6, 2005, and as further modified on the record as to the resolution of the claims of the taxing authorities who filed an Objection to the Plan

on May 9, 2005 (collectively, the "Plan"),[1] in the above numbered and styled bankruptcy cases (collectively, the "Bankruptcy Cases"). Appearing at this hearing were Robert Milbank, Jr., Trustee, in person and represented by counsel, Wm. Chris Wolffarth; StateStar Building Corporation and Sante Fe Development Corporation and the Green Parties (collectively "StateStar Group"), represented by and through their counsel of record, Alan S. Trust, of the law firm of Trust.Law.Firm, P.C.; William Brown, and C. Thomas Wesner, Jr. in person and by and through their counsel of record, C. Thomas Wesner, Jr. of the law firm of Wesner, Coke & Clymer, P.C.; GBL Holding Company, Inc. ("GBL"), by and through its counsel of record, Phillip Lamberson of the law firm of Winstead Sechrest & Minick, PC; Fletchers Nevada, Inc. ("Fletchers"), by and through its counsel of record, J. Mark Chevallier, of the law firm of McGuire, Craddock & Strother, P.C.; PatCan Nevada, Inc. and PatCan Texas, Inc. and the Pillitteri Parties (collectively, "PatCan"), by and through their counsel, Chris Weil of Weil & Petrocchi and Kevin Ganci of the law firm of Shields, Britton & Fraser, P.C.; and the Dallas County and Tarrant County taxing authorities, by and through their counsel of record, Laurie Spindler of the law firm of Linebarger, Goggan, Blair & Sampson, LLP.

The taxing authorities withdrew their objection to the Plan based upon the agreement announced on the record. At this hearing, the Court considered the exhibits introduced, the testimony presented, and the argument of counsel. The objections of Brown and Wesner to the Plan, as further set forth herein, are overruled. In accordance with this hearing, this Court being fully apprised in the premises and good cause

---

1    All capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Plan.

appearing therefore, this Court makes the following findings of fact and conclusions of law in support of confirmation of the Plan.

## I. FINDINGS OF FACT

1.      On April 5, 2004 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11.  Milbank was appointed as Trustee for all Debtors on or about June 9, 2004.

### A. The Liquidation of the Debtors' Assets

2.      The Trustee has liquidated virtually all assets of all of the Debtors.

### B. The Plan

3.      The Plan embodies a series of heavily negotiated, inter-related settlements, which are critical to the success of the Plan, and provides for the remaining liquidation of the Estates and the distribution of several million dollars to creditors and equity security holders.

### C. The Trustee's and counsel's fulfillment of their fiduciary duties

4.      The Trustee and his counsel have dutifully fulfilled their fiduciary duties. The Trustee and his counsel carefully evaluated their duties and obligations with respect to each of the estates, and have faithfully and carefully fulfilled their roles and duties, avoiding any conflict of interests.

### D. The Plan Documents

5.      An Amended Disclosure Statement in support of the First Amended Plan of the StateStar Group and of the Plan of Reorganization of the Trustee were approved by the Court and provided to all creditors and equity security holders.  This Court entered an Order fixing confirmation of the Plan for May 10, 2005 (the "Hearing Order"). In accordance with the Hearing Order, the notice of the confirmation hearing for the

Plan and the proper ballots were mailed on behalf of the StateStar Group on April 14, 2005 to all creditors, interest holders and other parties in interest in the Bankruptcy Cases in full compliance with this Court's Order and the requirements of Rule 3017(d) of the Federal Rules of Bankruptcy Procedure. On May 6, 2005, in accordance with § 1127, the Plan Proponents filed and duly served their First Modification to the Plan.

6.     The Hearing Order fixed May 5, 2005, as the last day for filing written objections to confirmation of the Plan pursuant to Bankruptcy Rule 3020(b)(1). As of that date, only Brown and Wesner had filed any such objections.

7.     The Hearing Order also fixed May 5, 2005, as the last day for the return of ballots to counsel for the Trustee pursuant to Bankruptcy Rules 3017(c) and 3018(a). The Plan classified nineteen (19) separate classes of claims and interests. All classes of Claims and Interests who voted on the Plan voted in favor of the Plan with the exception of Class 18, Brown, which voted against the Plan.

### E. The Resolution of the Objections to the Plan

8.     The Dallas County and Tarrant County Taxing Authorities withdrew their objection to the Plan based on the agreement announced on the record, which is for taxes of $1,494.89 to Tarrant County and $23.51 to Dallas County to be paid within ten (10) days of the Effective Date, which payment resolves all remaining Claims of these taxing authorities.

9.     The Brown and Wesner objections are overruled.

10.     To the extent that any of the below conclusions of law may be considered findings of fact, the same are incorporated by reference as though fully set forth as findings of fact.

## II. CONCLUSIONS OF LAW

1. Under 11 U.S.C. § 301, the filing of the Debtors bankruptcy petitions constituted orders for relief under chapter 11 and, up until appointment of the Trustee, the Debtors operated as Debtors-in-possession under 11 U.S.C. §§1107 and 1108.

2. This Court has jurisdiction to consider the Plan under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

3. Venue of the Bankruptcy Case is proper before this Court in this district under 28 U.S.C. §§ 1408 and 1409.

4. To the extent that any of the above findings of fact may be considered to constitute conclusions of law, the same are incorporated by reference as though fully set forth as conclusions of law.

### A. Notice of and Voting on the Plan

5. Notice of the hearing on confirmation of the Plan was proper and appropriate as was notice of the deadlines for filing objections to the Plan and for the submission of ballots with respect to the Plan.

6. The Plan divides the claims of creditors and interest holders into 19 classes. Only classes of creditors and interest holders with claims or interests impaired under a plan of reorganization are entitled to vote on a plan.

7. Under 11 U.S.C. § 1126(c), an impaired class of claims is deemed to have accepted the Plan if class members holding at least 2/3 in amount and more ½ in number of all allowed claims of class members actually voting have voted in favor of the Plan. By virtue of 11 U.S.C. § 1126(d), an impaired class of interests is deemed to have

accepted the Plan if class members holding at least 2/3 in amount of the allowed interests of class members actually voting have voted in favor of the Plan.

8. In this case, the requirements of 11 U.S.C. § 1126 have been satisfied. Of the classes entitled to vote, only members in Classes 6, 7, 7A, 8, 9, 10, 11, 12, 13, 14, 15, and 18 voted and, with respect to each class that voted, other than Class 18, Brown, every single ballot was in favor of the Plan.

## B. Confirmation Requirements

9. Section 1129 of the Bankruptcy Code contains the standards for confirmation of a plan under Chapter 11.

10. When a plan of reorganization satisfies each of the requirements contained in 11 U.S.C. § 1129(a), the court shall confirm the plan without considering 11 U.S.C. § 1129(b). Specifically, 11 U.S.C. § 1129(b) only applies if a class whose claims or interests are impaired does not accept the plan as required by 11 U.S.C. § 1129(a)(8). Moreover, a plan of reorganization need only satisfy the requirements of 11 U.S.C. § 1129(b) with respect to classes that voted against the plan. To the extent the Brown and Wesner claims are impaired, their objection to confirmation is overruled. In this case, all impaired classes that voted did so in favor of the Plan.

### i. Compliance With Title 11 by the Plan

11. Section 1129(a)(1) permits the court to confirm a plan only if the plan complies with the applicable provisions of title 11. Section 1122 of the Bankruptcy Code governs classification of claims and interests and 11 U.S.C. § 1123 sets forth the provisions that are required to be included and those that may be included in a plan of reorganization.

12. Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate, subject to 11 U.S.C. § 1122, classes of claims, other than claims of a kind specified in 11 U.S.C. §§ 507(a)(1) (administrative expenses), 507(a)(2) (involuntary case gap claims), or 507(a)(7) (certain unsecured tax claims) and classes of interests. In designating Classes 1 through 19 in the Plan, the Plan Proponents have satisfied the requirement of 11 U.S.C. § 1123(a)(1).

13. Section 1122(a) of the Bankruptcy Code does not require that similar claims necessarily be placed in the same class. Congress intended to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case. Moreover, Congress intended that the proponent of a plan have flexibility in classifying claims.

14. Article IV of the Plan, designating classes of claims and interests under the Plan, places only claims or interests in each particular class that are substantially similar to the other claims or interests in that class. The Plan therefore complies with 11 U.S.C. § 1122(a).

15. Section 1123 of the Bankruptcy Code describes mandatory and permissive plan provisions. Section 1123(a) of the Bankruptcy Code sets forth the required provisions of a plan while 11 U.S.C. § 1123(b) suggests certain discretionary plan provisions.

16. Section 1123(a)(1) of the Bankruptcy Code states that a plan must designate, subject to 11 U.S.C. § 1122, classes of claims, other than claims for administrative expenses under 11 U.S.C. § 507(a)(1), gap claims in involuntary cases under 11 U.S.C. § 507(a)(2) and certain unsecured tax claims under 11 U.S.C. § 507(a)(7), and classes of interests. The Plan, in Article IV, designates classes of claims

in interest in accordance with 11 U.S.C. § 1122.  Thus, the Plan complies with 11 U.S.C. § 1123(a)(1).

17.     Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under the plan.  In Article IV of the Plan, the Plan Proponents meet this requirement by specifying the classes that are not impaired under the Plan.  Administrative Expense Claims and Priority Tax Claims are not impaired under the Plan.  The treatment of the holders of the allowed claims in these unimpaired classes is set forth in Article IV of the Plan.

18.     Section 1124 of the Bankruptcy Code sets forth the ways by which a claim can be left unimpaired under a plan.  Therein, Congress defined impairment in broad terms and then carved out exceptions to that definition.  These exceptions are important because, under 11 U.S.C. § 1126(f), a class that is not impaired under a plan is deemed to have accepted the plan.  The exceptions to impairment is applied in the Plan.

19.     Under one of the exceptions to impairment, as provided in 11 U.S.C. § 1124(2), if, on the effective date, the holder of a claim receives cash equal to the allowed amount of such claim, the creditor is unimpaired.

20.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan.  With the exception of claims falling within 11 U.S.C. §§ 507(a)(1), (a)(2) and (a)(7), every claim and interest in a chapter 11 case must be placed in a class and every class must be designated as impaired or unimpaired.  See 11 U.S.C. §§ 1123(a)(1) and (a)(2).  The Plan satisfies these requirements.  Article IV of the Plan specifies the treatment of classes of claims.  The discussion of the treatment of classes under the Plan contained in Article IV satisfies the requirement of 11 U.S.C. § 1123(a)(3).

21.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment. Thus, once a plan has classified creditors, it must provide the same treatment for each claim or interest of a particular class, unless the holder agrees to less favorable treatment. However, this section only requires the equality of treatment of claims or interests that are placed in the same class. The Plan provides for the same treatment of each claim or interest of a particular class. Thus, the Plan complies with 11 U.S.C. § 1123(a)(4).

22.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the plan's implementation and provides a number of examples of methods for doing so. The alternatives set forth in 11 U.S.C. § 1123(a)(5) may be proposed by a plan proponent notwithstanding non-bankruptcy law or agreements. The examples of the adequate means for implementation of a plan provided in 11 U.S.C. § 1123(a)(5) are illustrative and the section does not exclude or limit any other means.

23.     The Plan provides adequate means for the Plan's implementation.

24.     Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of non-voting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. This provision only prohibits the issuance of

new non-voting securities. The Debtors are not corporations. The Plan does not provide for the issuance of equity securities.

25.     Section 1123(a)(7) of the Bankruptcy Code states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee. Section 1129(a)(5) of the Bankruptcy Code, which is discussed below, augments 11 U.S.C. § 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of an affiliate of the debtor participating in a Plan with a debtor, or other successor to the debtor under the plan. In addition, 11 U.S.C. § 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with "the interests of creditors and equity security holders and with public policy." The Plan complies with these provisions.

26.     Section 1123(b) of the Bankruptcy Code suggests certain permissive plan provisions. Several of these discretionary provisions are contained in the Plan. The Plan specifically includes a number of the suggested discretionary plan provisions set forth in 11 U.S.C. § 1123(b).

27.     Section 1123(b)(5) of the Bankruptcy Code also permits a plan to contain "any other appropriate provision not inconsistent with the applicable provisions of this title." The Plan does not contain any provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

28.    The Plan complies with both 11 U.S.C. § 1122 and with the mandatory and permissive provisions of 11 U.S.C. § 1123.  Moreover, the Plan does not violate any other applicable provision of title 11.  Therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(1).

### ii.  Compliance With Title 11 by the Plan Proponents

29.    Section 1129(a)(2) of the Bankruptcy Code states that the court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code.  The principal purpose of this section is to require, as a condition of confirmation, that the Court ascertain whether the proponents of the Plan have complied with the requirements of 11 U.S.C. § 1125 in the solicitation of acceptances of the plan.  Under 11 U.S.C. § 1125, a post-petition solicitation of votes on a plan is improper unless the court has approved a written disclosure statement filed with the plan.  The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan.  A disclosure statement need not comply with the disclosure standards of the federal securities laws.  Bankruptcy judges have broad discretion in reviewing disclosure statements and what constitutes adequate information in any particular instance will develop on a case by case basis.

30.    This Court approved both of the Plan Proponents Disclosure Statements, finding that they contained adequate information. The Plan Proponents have complied with all other applicable provisions of title 11 and, therefore, have satisfied the requirement of 11 U.S.C. § 1129(a)(2).

### iii. Good Faith

31.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law.  This requirement is to be read restrictively.  The term "good faith" is not specifically defined in the Bankruptcy Code.  However, in the context of 11 U.S.C. § 1129(a)(3), courts have interpreted "good faith" to mean that there exists a reasonable likelihood that the plan will achieve results consistent with the objectives of the Bankruptcy Code or that the plan was proposed with honesty and good intentions and with a basis for expecting a reorganization to be effected.  This Court's determination of the "good faith" proposal of the Plan under 11 U.S.C. § 1129(a)(3) must be made in light of "the totality of the circumstances surrounding the Plan.

32.     The objections to confirmation filed by both Brown and Wesner were based, in part, on allegations that the Plan was not filed in good faith, in contravention of 11 U.S.C. § 1129(a)(3). These objections are overruled, as this Court has determined that the Plan has been proposed in good faith and not be any means forbidden by law.

33.     The proposal of the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with the basis for expecting that, under the circumstances, it was the best means for maximizing recovery by creditors of the Debtors.  Therefore, the Plan has been proposed in good faith, and not by any means forbidden by law, and complies with 11 U.S.C. § 1129(a)(3).

### iv.  The Payment of Fees and Expenses

34.    Section 1129(a)(4) requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable.  The Plan procedure for review and ultimate determination by the Court of the professional fees and expenses to be paid by the Debtors satisfies the requirement of 11 U.S.C. § 1129(a)(4).

### v.  Post-Confirmation Management and Their Compensation

35.    Section 1129(a)(5)(A) of the Bankruptcy Code requires the proponents of a plan to disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer or voting trustee of the debtor, an affiliate of the debtor participating in a Plan with a debtor, or a successor of the debtor under the plan, and requires the appointment or continuance of such individual to be consistent with the interest of creditors and equity security holders and with public policy.  Paragraph 7.9 of the Plan discloses the identity and affiliations of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the Debtors as Robert Milbank, Jr., Plan Trustee.  Therefore, the requirements of 11 U.S.C. § 1129(a)(5)(A), to the extent applicable, have been satisfied.

36.    Section 1129(a)(5)(B) of the Bankruptcy Code requires the proponent of the plan to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.  The term "insider" is defined in 11 U.S.C. § 101(31).  There are no insiders to be so employed. The Plan complies with 11 U.S.C. § 1129(a)(5)(B).

### vi. Government Regulation

37.     Section 1129(a)(6) of the Bankruptcy Code requires as a condition precedent to confirmation that any governmental regulatory entity with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. The Plan does not provide for any rate change and, therefore, this section does not apply.

### vii. The Best Interest of Creditors Test

38.     Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of creditors" test. This section provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 on such date.

39.     Under the Plan, any recovery by creditors will exceed that which would result in a chapter 7 liquidation. Therefore, the Plan satisfies the "best interest of creditors" test of 11 U.S.C. § 1129(a)(7).

### viii. Acceptance and Impairment

40.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accepts the plan or is not impaired under the plan. Whether a class has accepted the plan is determined by reference to 11 U.S.C. § 1126. Under 11 U.S.C. § 1126(f), any class which is not impaired under the plan is conclusively presumed to have accepted the plan.

41. All voting classes under the Plan approved the Plan, other than Class 18, Brown.[2] To the extent Brown and Wesner are impaired under the Plan, the Plan satisfies the requirements of 11 U.S.C. § 1129(b). In particular, the Plan does not discriminate unfairly, and is fair and equitable with respect to Class 18, Brown, and is otherwise fully in compliance with 11 U.S.C. § 1129(b)(1). Moreover, because the Plan satisfies each of the requirements contained in 11 U.S.C. § 1129(a), the Plan Proponents are entitled to an order confirming the Plan.

### ix. Unsecured Priority Claims

42. Section 1129(a)(9) of the Bankruptcy Code states the rules applicable to the payment of those unsecured claims entitled to priority and distribution in chapter 11 cases. With respect to priority claims of the kind specified in 11 U.S.C. § 507(a)(1), (2) or (7), 11 U.S.C. § 1129(a)(9) constitutes the only essential confirmation requirement, since there is no reason to create a class or classes for 11 U.S.C. § 507(a)(1), (2) and (7) claims in light of the fact that a majority of such classes cannot bind a minority to less favorable payment terms than those provided under 11 U.S.C. § 1129(a)(9). Unless the holder of such a priority claim agrees to less favorable treatment of its claim, 11 U.S.C. § 1129(a)(9) requires the payment of first (11 U.S.C. § 507(a)(1)) and second (11 U.S.C. § 507(a)(2)) priority claims in full in cash on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Paragraph 5.1 of the Plan, dealing with administrative expenses under 11 U.S.C. § 503(b), and paragraph 15.7 of the Plan, concerning all fees payable under § 1930 of title 28 of the United States Code, provides for the appropriate treatment of 11 U.S.C. § 507(a)(1) claims in compliance with 11 U.S.C. § 1129(a)(9)(A). There are no claims against the Debtors entitled to priority under 11 U.S.C. § 507(a)(2),

---

[2] Wesner's claim arises by way of assignment by Brown of a portion of Brown's claim.

ordinary course of business "gap" claims in an involuntary case that arise under 11 U.S.C. § 502(f), or 11 U.S.C. § 507(a)(7), regarding alimony or family support obligations.

43. Section 1129(a)(9)(B) of the Bankruptcy Code requires that holders of 11 U.S.C. § 507(a)(3), (4), (5) or (6) priority claims receive: (I) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim. 11 U.S.C. § 1129(a)(9)(B). There are no claims against the Debtors entitled to priority under 11 U.S.C. § 507(a)(3), (4), (5) or (6). Therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9)(B).

44. Section 1129(a)(9)(C) of the Plan requires that holders of 11 U.S.C. § 507(a)(8) priority claims receive on account of such claims deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such claims, of a value as of the effective date of the plan, equal to the allowed amount of such claims. There are no § 507(a)(8) priority claims against the Debtors. Thus, the treatment of 11 U.S.C. § 507(a)(8) claims under the Plan complies with 11 U.S.C. § 1129(a)(9)(C).

**x. Acceptance of a Plan and Insiders**

45. Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. As discussed above, 11 U.S.C. § 1126 provides the requirements for determining acceptance. Section 1129(a)(10) of the Bankruptcy Code requires affirmative acceptance of a plan by at least one impaired

class of claims, unless all classes of claims are left unimpaired. As discussed above, impaired voting classes of claims under the Plan have voted in favor of the Plan. Therefore, the requirements of 11 U.S.C. § 1129(a)(10) are satisfied.

### xi. Feasibility

46.     Section 1129(a)(11) of the Bankruptcy Code requires as a condition of confirmation that the court find that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. The feasibility standard is one of commercial viability, and whether it is more probable than not that the plan can be effectuated successfully. Success need not be guaranteed under 11 U.S.C. § 1129(a)(11). The Plan is a liquidating plan and, therefore, satisfies the feasibility requirement of 11 U.S.C. §1129(a)(11).

### xii. Statutory Fees

47.     Section 1129(a)(12) of the Bankruptcy Code mandates the payment of all fees required under 28 U.S.C. § 1930, including filing fees and United States Trustee quarterly fees. In the event that any such fees are owing on the Effective Date they will be paid pursuant to Article 15.7 of the Plan. Therefore, the requirement of 11 U.S.C. § 1129(a)(12) is satisfied.

### xiii. Retiree Benefits

48.     The Debtors are not obligated for any retiree benefits as that term is defined in 11 U.S.C. § 1114 and, therefore, 11 U.S.C. § 1129(a)(13) does not apply.

## C. Settlements

49.     The Plan incorporates a variety of inter-related settlements.  In deciding whether to approve a proposed settlement agreement or compromise of controversy, a bankruptcy court should consider the following factors: the probability of success on the merits and the resolution of the dispute; the complexity of the litigation being settled; the expense, inconvenience and delay associated with litigating the dispute; and the paramount interests of creditors. *Texas Extrusion Corp. v. Lockheed Corp.* (In re Texas Extrusion Corp.), 844 F.2d 1142, 1158-59 (5th Cir. 1988), *cert denied*, 105 S. Ct. 31 (1989); *United States v. Aweco., Inc. (In re Aweco, Inc.),*752 F.2d 293, 298 (5th Cir. 1984), *cert denied*, 469 U.S. 880 (1984). It is not incumbent upon the proponent to present a mini-trial or a full evidentiary hearing.  *Texas Extrusion*, 844 F.2d at 1158-1159; *Aweco,* 625 F.2d at 298.

50.     The settlements described in the Plan, including those with the Settling Parties are each individually and collectively in the best interests of the Debtors and their bankruptcy estates.  Debtors and the Trustee could not obtain these results without these agreements.  These settlements allow for finality of a host of lawsuits, pending and potential, and allow these Estates to be fully administered, and for several millions dollars held by the Trustee to be quickly disbursed. In addition, the contributions being made by the Green Parties and the Pillitteri Parties of $150,000 of cash each is substantial, particularly when added to the release of significant unsecured claims.

## D. Injunctions and Third Party Releases

51.     The discharge provision in Article 13.1 of the Plan, the injunction provision of Article 7.6 of the Plan, the exoneration and reliance provision of Article 7.7 of the Plan, the release provision of Article 4.18 of the Plan, and the release provision of

Article 11.4 of the Plan: (a) are each within the jurisdiction of this Court under 28 U.S.C. § 1334; (b) are each an essential means of implementing the Plan under 11 U.S.C. §1123 (a)(5); (c) are each integral elements of the agreements, settlements and compromises that are incorporated into the Plan; (d) confer material benefits on, and thus are in the best interests of, the Debtors, their estates, their creditors, equity security holders, and other parties in interest; and (e) are, under the facts and circumstances of this bankruptcy case, consistent with and permitted under 11 U.S.C. §§ 105, 524, 1123, 1129 and all other applicable provisions of the Bankruptcy Code. In addition, the permanent injunction of Article 7.6 of the Plan is specific in nature, is critical to the overall, inter-related settlements under the Plan, is in the best interests of the estates and their creditors and equity security holders and other parties in interest, and allows payments to be made to Brown that are not otherwise available from the estates, and may not be available from other sources, and brings finality to years of litigation. This injunction shall issue.

### E. Provisions Of Plan And Order Nonseverable And Mutually Dependent

52. The provisions of the Plan and the Order and thsee related Findings of Fact and Conclusions of Law are nonseverable and mutually dependent. The Order constitutes a judicial determination that each term and provision of the Plan, as it may have been altered, modified or interpreted at the Confirmation Hearing or the confirmation of the Plan, is valid and enforceable pursuant to its terms.

### F. Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns

53. The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to the Confirmation Order. Immediately upon the entry of the Order, the terms of the Plan and

this Order are deemed binding upon (a) the Debtors, (b) the Trustee and the Plan Trustee, (c) all holders of Claims against and Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any Person making an appearance in these Chapter 11 Cases, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

### G.  Substantive Consolidation

54.     The substantive consolidation of Portobello and BTC for Plan purposes is ap–proved. Accordingly, for Plan purposes, among other things, any identical obligation of Portobello or BTC jointly with respect to any Class of Claims or Interests and any joint or several liability of Portobello and BTC shall be treated as a single obligation.

### H.  Retention Of Jurisdiction

55.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIV of the Plan.

### I.  Separate Confirmation Orders

56.     The Confirmation Order and the related Findings of Fact and Conclusions of Law are shall be deemed a separate Confirmation Order and Findings of Fact and

Conclusions of Law with respect to each of the Debtors in each Debtors' separate Chapter 11 Case for all purposes. The Clerk of the Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors.

### J. Conclusion on Confirmation

57.     The Plan Proponents have demonstrated that they are entitled to an order of the Court confirming the Plan.  Such an Order shall be entered.

***[END OF DOCUMENT]***